IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| INTERNATIONAL TRACTOR CO., INC. and EILAT LEV, )<br>)<br>Plaintiffs/Counter-Defendants, )<br>)<br>v. )<br>)<br>JERRY E. WINN, )<br>)<br>Defendant/Counter-Plaintiff, )<br>) | Case No. 3:09-0015<br>Judge Trauger |

## MEMORANDUM

Pending before the court are Defendant/Counter-Plaintiff Jerry Winn's Motion to Dismiss for Failure to Prosecute and/or for Sanctions (Docket No. 38) and Winn's Motion for Partial Summary Judgment (Docket No. 45).[1] For the reasons discussed herein, the claims against Winn will be dismissed and, as it is agreed that Winn is entitled to a substantial judgment in his favor, the court will set a status conference to discuss the next steps in this somewhat irregular litigation.

## FACTUAL AND PROCEDURAL BACKGROUND

This case concerns several payments made by the defendant/counter-plaintiff Jerry Winn

---

[1] Also listed as pending on the docket is Winn's Motion to Extend Upcoming Deadlines in Case Management Order (Docket No. 34). In essence, this motion was addressed through the court's April 1, 2010 Order that stayed all deadlines in this case pending a resolution of the Motion to Dismiss. (Docket No. 42.) In the accompanying Order, the court will term this motion.

1

for the purposes of investing in International Tractor Co., Inc. (ITC), which is a plaintiff/counter-defendant in this case.[2]  Mr. Winn is a Tennessee resident, who, after selling his interest in a limestone quarry business in 2007, heard about an opportunity to invest his newfound money with ITC.  ITC is a New York corporation the majority shareholder and president of which is plaintiff/counter-defendant Eliat Lev.  According to Lev, "the business of ITC is buying and selling heavy construction equipment throughout the world."  (Docket No. 51 at 1.)

It is not disputed that, through four payments (July 10, 2007, January 18, 2008, August 18, 2008, and August 21, 2008), Winn "loaned," "invested," or "advanced" a total of $11,608,403 to be used in conjunction with ITC's heavy equipment business.  (Docket No. 52 at 1-2.)  Lev and ITC now maintain that this money went directly to ITC and that Lev did not receive any money individually.  Winn is not explicit on this point in his declaration; at times, he states that he loaned money to ITC and Lev and, at other points, he states that he paid money to ITC.  (Docket No. 48 at 1-2.)

Accompanying each loan or investment was a promissory note that was, among other things, signed by Lev in his individual capacity and on behalf of ITC.  (Docket No. 1 Exs. A-E.)  Each of these notes envisioned a short-term loan in which Winn would receive his principal payment back plus a considerable sum of interest.  (*Id.*)

---

[2]Unless otherwise noted, the facts are drawn from the parties' Statements of Material Facts (Docket Nos. 47 and 52), and related affidavits and exhibits.  Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

2

ITC apparently encountered financial difficulties, and the last payment Winn received from ITC was on September 11, 2008. Winn claims that he has only received payments totaling $3,448,876.56 from ITC and that all of the money (plus interest) was to have been re-paid no later than November 5, 2008. (Docket No. 8 at 17.) ITC and Lev state that Winn has overlooked about $710,000 in payments from ITC, but there is no dispute that ITC has failed to timely pay Winn several million dollars in principal payments, in addition to interest.

On January 8, 2009, ITC and Lev sued Winn. The Complaint recounts that ITC and Lev signed several promissory notes with Winn in conjunction with a series of short-term loans, the interest on which ranged from 20 to 60 percent. (Docket No. 1 at 1-5.) ITC and Lev claimed that the notes were all "unenforceable as usurious and in violation of Tennessee laws," and they sought a declaratory judgment that the notes were unenforceable and an award of the interest that they had paid "in excess of that allowed under Tennessee law." (*Id.* at 5-10.)

In his Answer and Counterclaim, Winn pointed out that Tennessee law prohibits an "equitable remedy with respect to usury or excess loan charges" unless the individual seeking the remedy has tendered the loan principal and lawful interest, which ITC and Lev had clearly not done. (Docket No. 8 at 9 quoting T.C.A. § 47-14-115.) In his counterclaim (initially against Lev only), Winn asserted claims for (1) "Return of funds advanced (or for money had and received)," (2) fraud, (3) federal and state securities law violations, (4) and violations of the Tennessee Consumer Protection Act. (Docket No. 8 at 17-21.) In August 2009, after Lev answered the counterclaim, Winn amended his counterclaim to assert these claims against ITC as well, as ITC had just been dismissed from its involuntary bankruptcy proceeding and was no

3

longer protected by the automatic stay. (Docket Nos. 19-22.)

On March 17, 2010, Winn filed the pending Motion to Dismiss for Failure to Prosecute and/or for Sanctions. In this motion, Winn alleged that ITC and Lev had done nothing to prosecute their claims and had repeatedly "stonewalled" Winn in his efforts to pursue his counterclaims by (1) not conducting, participating in or responding to discovery, (2) not making key witnesses, including Lev, available for deposition, and (3) failing to associate new local counsel after local counsel had withdrawn in August 2009. (Docket No. 39 at 2-5.) Winn, therefore, sought the dismissal of the plaintiffs' claims and an entry of default on his counterclaims, along with attorneys' fees and costs or, alternatively, a prohibition against ITC and Lev submitting any evidence at trial that had not been made available through discovery. (*Id.* at 12.) On April 1, 2010, the court stayed all discovery deadlines pending resolution of the Motion to Dismiss. (Docket No. 42.)

On April 7, 2010, Winn filed the pending Motion for Partial Summary Judgment. In this motion, Winn seeks summary judgment only on ITC's and Lev's affirmative claims and on his money had and received claim (Count I of his Amended Counterclaim). (Docket No. 46 at 2.) ITC and Lev have retained new local counsel and have submitted a timely response to Winn's motion. (Docket Nos. 49-52.)

## ANALYSIS

Winn seeks summary judgment on ITC's and Lev's usury claims and on his affirmative claim for money had and received. Winn also has a pending Motion to Dismiss and for Sanctions in conjunction with the long-term failure of ITC and Lev to prosecute this case and to

4

participate in discovery.

**I.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  If the moving party shows that there is no genuine issue of material fact as to at least one essential element of the non-moving party's claim, the burden shifts to the non-moving party to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial."  *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [non-moving party]."  *Moldowan*, 578 F.3d at 374.

"'[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the non-moving party's proof must be more than "merely colorable."  *Anderson*, 477 U.S. at 249, 252.  An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party.  *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**II.     Analysis**

ITC and Lev do not challenge Winn's argument that their "usury" claims, which sparked

5

this litigation, are without merit. (Docket No. 46 at 5; Docket No. 50 at 1.) As originally stated by Winn in his Answer, under Tennessee's usury statute, the borrower must have paid (to the lender or into the court registry) the principal due on the loan at issue, plus legal interest, before he can collect usurious interest previously paid or seek a judgment that he is not obligated to pay usurious interest. T.C.A. § 47 14-114; T.C.A. § 47-14-115. As there is no contention that ITC and Lev have paid the full principal, let alone legally allowable interest, ITC's and Lev's usury claims will be dismissed.

The remaining issue from Winn's Motion for Partial Summary Judgment is whether Winn is entitled to summary judgment on his money had and received claim. In Tennessee, this claim exists where "one person has received money . . . under such circumstances that in equity and good conscience he ought not to retain it and [rightly] it belongs to another." *Lawyers Title Ins. Corp. v. United Am. Bank of Memphis*, 21 F. Supp.2d 785, 807 (W.D. Tenn. 1998)(internal quotation omitted). A claim for money had and received is quasi-contractual in nature and is often considered "the equivalent of a claim for unjust enrichment under Tennessee law." *Broadnax v. Swift Transportation Co.*, 2010 WL 937853, *3 (W.D. Tenn. Mar. 17, 2010).[3]

ITC and Lev do not dispute Winn's contention that, even if the promissory notes assess usurious interest, "the usury statutes . . . do not bar a creditor from recovering debt owed . . . plus lawful interest thereon." (Docket No. 46 at 5; Docket No. 50 at 1); *see also* T.C.A. § 47-14-

---

[3] Similarly, "the elements of an unjust enrichment claim are: (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, (3) and acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus., LLC v. Eastman Chem. Co. Inc.*, 172 S.W. 3d 512, 525 (Tenn. 2005)(internal citation and quotation omitted).

6

117(a)("Any contract which on its face requires the payment of usury . . . shall not be enforceable; but the original lender or creditor may sue to recover principal actually advanced, plus lawful interest . . . .") Indeed, there is no dispute that at least ITC is liable to Winn for a substantial amount of money under Winn's money had and received claim. (Docket No. 50 at 1)("Plaintiffs do not oppose Winn's motion for summary judgment as to funds advanced and money had and received by ITC . . .")

Winn claims that, of the $11,608,403 that he has advanced, he has received $3,448,876.56 back from ITC, leaving a principal balance of $8,159,526.44. (Docket No. 46 at 9.) Winn also maintains that he is entitled to $1,594,792.67 in interest accrued "at the lawful rate." (*Id.*) Attached to Winn's declaration is a historical listing of the "maximum effective formula rate of interest in Tennessee," apparently taken from the Tennessee Department of Financial Institutions website (Docket No. 48 Ex. 2) and a spreadsheet that documents what the interest on the loans here would be at that maximum rate as it changed over the time period since Winn started lending money to support ITC. (Docket No. 48 Ex. 1.) Again, this spreadsheet indicates that $1,594,792.67 in interest at the legal rate is owed. (*Id.*)

In response, ITC and Lev raise two challenges. First, they argue that "Winn is not entitled to judgment against Lev for return of funds advanced or money had and received" because "Winn cannot show that he advanced funds to Lev or that Lev had and received money from him because the loan proceeds were, in fact, had and received by ITC." (Docket No. 50 at 5-6.) ITC and Lev point to the places in Winn's declaration where he states that he advanced funds to ITC but does not mention Lev. (*Id.* at 7.) Additionally, in his declaration, Lev contends

7

that all money paid by Winn "went directly from Winn to ITC's checking account with Gotham Bank in New York. I did not receive the money." (Docket No. 51 at 2.) Attached to Lev's declaration are Gotham Bank statements for the ITC account, which do not show Lev as a joint holder of the account and appear to show the money paid by Winn going into the ITC bank account. (Docket No. 51 Exs. 1-4.)

Given that the receipt and retention of money is a basic element of the quasi-contractual claim asserted by Winn, ITC and Lev argue that Winn does not have a viable claim against Lev because "Winn cannot show that he advanced funds to Lev or that Lev had and received money from him because the loan proceeds were, in fact, had and received by ITC." (Docket No. 50 at 6.) Lev claims that he personally received no benefit from the loan proceeds and, therefore, it would be inequitable for the court to hold him liable on Winn's money had and received claim. (*Id.* at 7.)

Given that Lev is the majority shareholder and president of ITC, it is certainly possible that further fact finding will show that he received and retained some of the money at issue, even if the money was deposited in the ITC account. That said, ITC and Lev have come forth with evidence that raises a genuine issue of fact as to whether Lev received any money from Winn, and Winn has not effectively responded to this evidence. In light of this, the court will not enter summary judgment against Lev on Winn's "money had and received" claim.

The second challenge raised by ITC and Lev concerns the exact amount of money that ITC "had and received." (Docket No. 50 at 8-9.) ITC and Lev claim that, among other payments, ITC paid Winn $700,000 on July 28, 2008 and $138,082.00 on August 21, 2008.

8

(*Id.*.)  However, they claim that, in his submissions, Winn has not accounted for the $700,000 payment at all and that Winn only alleges that $128,876.56 was repaid on August 21, 2008.[4]  (*Id.*)  Attached to Lev's declaration, again, are Gotham Bank statements that show that, on July 28, 2008, $700,000 was paid from ITC's account to Winn and that, on August 21, 2008, $138,082 was paid to Winn from the same account.  (Docket No. 51 Exs. 5-6.)  Therefore, while ITC and Lev do not dispute that Winn has a valid money had and received claim against ITC, they claim that they have raised a genuine issue of fact as to the amount that should be awarded.  (Docket No. 50 at 8.)

ITC and Lev have come forth with persuasive evidence that the amount requested by Winn is not accurate.  Additionally, from the spreadsheet tabulating the amount owed that was submitted by Winn, it is clear that, particularly because of the changing applicable interest rate and balance owed, determining the precise amount owed (based upon ITC's and Lev's argument here) involves a detailed mathematical calculation that the court is hesitant to attempt on its own.  As discussed below, in the accompanying Order, the court will set a status conference in this case, and, in the meantime, the parties should discuss whether they can agree on a precise amount owed by ITC under this claim and whether it would be appropriate for the court to enter a Fed. R. Civ. P. 54(b) judgment for that amount.

### III.   Motion to Dismiss and For Sanctions

As discussed above, prior to filing his Motion for Partial Summary Judgment, Winn filed

---

[4]The spreadsheet attached to Winn's declaration makes no reference to a $700,000 payment and reflects a $128,876.56 payment.  (Docket No. 48 Ex. 1.)

a Motion to Dismiss for Failure to Prosecute and/or for Sanctions. (Docket No. 38.) At the time that that motion was filed, ITC and Lev did not have local counsel and, apparently, were not participating or engaging in this litigation. (Docket No. 39 at 2-3.) Winn was also clearly concerned that ITC's and Lev's conduct would affect his ability to prepare for the August 2010 trial date and meet the relevant scheduling Order deadlines. (*Id.* at 6.) Winn's motion outlined ITC's and Lev's failures and unwillingness to participate in the litigation and requested that, under Fed. R. Civ. P. 41, their case be dismissed for failure to prosecute and that, as an additional sanction, "default" be entered against ITC and Lev on Winn's counterclaim and attorneys' fees and costs be assessed against ITC and Lev. (*Id.* at 12.) Alternatively, Winn requested that ITC and Lev be prohibited from putting on any evidence or testimony at trial that was not turned over in discovery. (*Id.*)

Since the time that this motion was filed, there have been several developments that have affected its relevancy. First, the court stayed all discovery deadlines. (Docket No. 42.) Also, ITC and Lev have retained local counsel and, based upon their response to Winn's summary judgment motion, they now intend to engage in this case and defend at least some of the claims against them. And, finally, ITC and Lev have conceded that their usury claims are without merit and that Winn is entitled to a judgment (against ITC) awarding him the balance of his principal payments and lawful interest, properly calculated. This concession appears to moot a substantial portion of Winn's Motion to Dismiss.

In light of these developments, it appears that continuing to prosecute this case may be in Winn's best interest. Going forward, the best approach is for the parties and the court to have a

10

Case 3:09-cv-00015   Document 53   Filed 05/13/10   Page 10 of 11 PageID #: 543

status conference that will allow the parties to discuss, among other things, a new discovery schedule and trial date, and, whether, in light of the concessions made by ITC and Lev in this round of briefing, there is any possibility that this matter could be settled. As for the technical disposition of the motion, the court will deny the "dismissal" portion as moot and will deny the "sanctions" portion without prejudice. Winn may renew his request for sanctions against ITC and Lev if circumstances warrant.

## CONCLUSION

For the reasons discussed above, Jerry Winn's Motion for Partial Summary Judgment will be granted in part and denied in part. ITC's and Lev's claims against Winn will be dismissed, but issues of fact prevent the court from finding against both ITC and Lev for a certain amount on Winn's money had and received claim. Winn's Motion to Dismiss for Failure to Prosecute and/or for Sanctions will be denied as moot as to the "dismissal" portion and denied without prejudice as to the "sanctions" portion.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

11